TERESA M. MILLIGAN, Indiv. and as Mother and Next Friend to Debra Lynn Cange, a Minor, Plaintiff-Appellant, v. THOMAS KEVIN CANGE, Defendant-Appellee.

Fourth District   No. 4—89—0659

Opinion filed July 26, 1990.

Paul R. Wilson, Jr., of Wilson & Lanto, P.C., of Rantoul, for appellant.

Curtis W. Myers, of Law Offices of Curtis W. Myers, of Pontiac, for appellee.

JUSTICE LUND delivered the opinion of the court:

This appeal arises from decisions in a paternity proceeding in the circuit court of Ford County. The action for paternity was filed on April 1, 1987, by Teresa M. Milligan individually and as mother and next friend to D.L.C., a minor child, petitioner, although the child was born on February 26, 1983. Paternity was admitted by respondent, Thomas Kevin Cange, and an order establishing respondent's liability was entered.

A recitation of the evidence is necessary to understand petitioner's contentions on appeal.

The trial court entered an order on October 19, 1987, providing, in relevant part, that respondent pay temporary child support of $40 biweekly, commencing October 2, 1987. On April 1, 1988, petitioner filed a petition for a rule to show cause, alleging that respondent had failed to make child support payments subsequent to January 1988. Respondent filed a motion to abate child support, alleging that he was unemployed and had no money with which to pay support.

The trial court conducted a hearing pursuant to petitioner's motion and entered an order on May 13, 1988. The trial court found, in pertinent part, that (1) respondent's failure to pay child support was not

contumacious, (2) an arrearage of $120 existed in the payment of support, and (3) respondent was a full-time student with no income or property with which to pay child support. Accordingly, the court abated child support, found respondent in arrears in the payment of support in the amount of $120, and reserved the remaining issues.

On December 12, 1988, petitioner filed a motion to establish child support, which additionally requested that the court order the respondent to procure employment (see Ill. Rev. Stat. 1989, ch. 40, par. 2515.1 (eff. Jan. 1, 1989)). The parties subsequently entered stipulations. On February 17, 1989, the court entered an order according to the parties' stipulations which provided, in relevant part, that respondent was to pay child support in the amount of $25 per week, commencing Monday, February 20, 1989. The court also found that the arrearage in temporary child support cited in the court's order of May 13, 1988, had been paid. The cause was continued to May 12, 1989, for hearing on all remaining issues.

On May 5, 1989, petitioner filed a second petition for a rule to show cause, alleging that respondent made only 7 of 12 child support payments due through May 8, 1989.

The cause came for hearing on the issues of birthing expenses, post-birth support, and attorney fees on May 12, 1989. Petitioner testified that she is the mother of a child born February 26, 1983. The girl was conceived when petitioner was 14 and respondent was 19 years old. Petitioner paid all medical expenses associated with the child's birth and has paid all of the child's medical expenses since her birth. Counsel introduced petitioner's exhibit Nos. 1, 2, 3, and 5, which are copies of medical bills reflecting those expenses.

Petitioner stated that she owns a home in Melvin, Illinois, valued at $30,000, in which she and the child reside. Petitioner also owns a 1985 Pontiac Firebird, valued at $5,300. Petitioner's only other asset is her checking account, which contains a balance of approximately $90. Petitioner's exhibit No. 6 is an affidavit prepared by petitioner, reflecting monthly living expenses of $1,541 incurred by petitioner and her daughter. The affidavit also states the value of petitioner's home and automobile.

When questioned about attorney fees, petitioner stated that she paid a $450 retainer in order to bring this action some years ago and has been unable to pay any fees since then. Petitioner's exhibit No. 7, an affidavit of attorney fees incurred from March 1987 through May 4, 1989, reflects that petitioner owes counsel approximately $2,500 in fees.

Petitioner explained how she supported the child from the time of

the child's birth. Petitioner received a $550-per-month social security payment from the time of her father's death until she reached age 18. Respondent lived with petitioner prior to and approximately one month after the birth. Petitioner's social security payments were the couple's sole means of support, as respondent was a full-time student at Illinois State University (ISU). Other than the filing of the instant complaint, petitioner did not ask respondent for any contribution toward birthing or medical expenses.

In May 1983, three months after the birth, petitioner went to court in an effort to obtain an early distribution of a trust fund established after her father's death. Petitioner received $1,000 per month from the trust until she reached age 18, at which time she received a lump-sum distribution from the trust in the amount of $40,000 to $45,000. These funds were used to pay for birth expenses, and to purchase a home and a car. Petitioner stated that over the years she has borrowed against her home "to make ends meet" and "to support my daughter." She is indebted to the Roberts State Bank in the amount of $8,500.

Petitioner testified that she first requested child support from the respondent in late 1983, but she received no support. At that time, respondent was residing in Fairbury, Illinois. Shortly after this initial request, the respondent moved to Alaska and the petitioner never asked him for support again. When asked whether respondent refused to pay support, petitioner stated, "I don't remember. I am not clear on all these things. I am not sure whether he refused it. I am not sure whether I said forget it. I am not sure whether it just didn't happen. This is a long time ago. I can't remember a lot of what went on." Petitioner admitted that in December 1988, during a period in which respondent was not required to pay child support, he sent her $500.

From October 1986 to May 1987, petitioner was married to Mike Milligan. During their marriage, Milligan was employed and helped provide support for the petitioner and her daughter.

Petitioner attended one semester of community college since the birth, earning three "B's" and one "A" in accounting courses. She hoped to pursue a bachelor's degree, but could not afford to continue her education. Petitioner's financial affidavit reflects that she is employed at Terra International in Champaign and earns a weekly gross income of approximately $240.

When asked why she was having difficulty making ends meet, petitioner stated that she had recently returned to work from a two-month disability leave following surgery in March. Petitioner also stated that she suffered a stroke since she filed this action in 1987, and will require permanent medication for her condition. Petitioner described the

child's health as "fine." Petitioner added that the child is covered by health insurance and that all of her child's medical bills are paid.

Since the child was born, petitioner has not, on a regular basis, received any communications from the respondent inquiring as to the child's health or well-being. Petitioner stated that she has done nothing to prohibit respondent from communicating with her or her daughter.

Respondent testified both as an adverse witness and on his own behalf. Because his testimony of May 12, 1989, is occasionally incomplete, the facts are supplemented with information provided by respondent at prior hearings. Respondent testified that he is 27 years old and is the father of petitioner's child, D.L.C. Respondent is unemployed and attends Purdue University on a full-time basis. He stated that he anticipated graduation in December 1989, with a degree in actuarial science.

Respondent stated that he lived with petitioner for a few months before the child's birth and for two to three months after the birth. He had no income from any source at the time of the child's birth. His mother paid his tuition at ISU during that period. Respondent left the petitioner and their child when the petitioner was 15 years old. Respondent admitted that he knew there were certain costs associated with raising the child but, from the time he moved out of petitioner's home to the time petitioner filed suit, he contributed nothing to the child's support.

Respondent discussed his academic and employment history at length. From 1979 to 1980, respondent was employed by the Pittsburgh Tube Company, earning $3.35 per hour. From 1980 to 1983, respondent was enrolled at ISU. During that period, respondent completed two years toward his bachelor's degree. After he moved out of petitioner's home in 1983, respondent quit school for one semester and moved in with his mother in Fairbury, Illinois. He lived with his mother for five months and attended summer school at ISU. In August 1983, respondent moved to Anchorage, Alaska, and began working for Northway Development, earning approximately $10 per hour.

In January 1984, respondent returned to Illinois and attended the University of Illinois for one-half semester. Respondent explained that "halfway through the semester my father died, so I withdrew, and I went back to work in the middle of 1984." Respondent continued his employment with Northway from the time of his return to Alaska in 1984 through June 1987. While in Alaska, respondent lived in a home owned by his family. He paid for property taxes and homeowner's insurance. In July 1987, respondent voluntarily terminated his employ-

ment to attend Purdue University. Respondent testified that he was already enrolled when he learned that petitioner had filed the instant complaint.

While he resided in Alaska, respondent owned a Corvette, which he sold in May or June 1987 before he returned to college. Respondent netted approximately $7,000 in the sale of his car, which he used to pay bills.

Counsel for respondent introduced respondent's exhibit No. 1, which states respondent's income from 1983 through 1987. The form sets forth respondent's adjusted gross income for that five-year period as follows: 1983 $11,600; 1984 $7,615.09; 1985 $24,351.70; 1986 $21,880.26; and 1987 $13,914.19. Respondent testified that during the years 1985 and 1986, when he earned over $20,000 per year, he spent the money he earned for "living, bills, and things." He stated that the cost of living in Anchorage is "much higher" than in Illinois. During this period, he was never asked to pay support. Respondent's only recollection of petitioner asking for support was a conversation in August 1983. At that time, petitioner and respondent had tentatively agreed to $120-per-month support, but could not agree upon a visitation schedule, so their negotiations ended. Respondent stated that he and petitioner could not agree to visitation because "I don't think she wanted me to see [the child]."

Respondent has not been employed since he returned to college. He resides with his fiancee, who has provided for his support since July 1987, with some income on respondent's behalf coming from student loans. He testified that he and his fiancee intend to marry in July 1989. Respondent's fiancee earned her "art, restaurant-hotel administration" degree from Purdue University and is employed as a receptionist. Respondent's grade-point average is 5.7 on a 6.0 scale. He stated that he is seeking employment with an insurance agency, but has no post-graduation employment prospects.

Respondent has no savings or assets other than a television set and a checking account with a balance of "maybe $50." Respondent added, "It is possible that I could have an inheritance, but I can't say it will be within six months or a year." He testified that the estate consists of residential lots and homes located in Anchorage, Alaska. Distribution will be shared among eight children.

Respondent owes $16,500 in student loans and stated that he expects to borrow an additional $5,000 to $6,000 in order to complete college. He estimated that by the time of his graduation in December 1989, he will owe approximately $22,000 to $23,000.

Respondent testified that he has been paying support since the

court entered its order of February 17, 1989, requiring him to pay $25 per week. After reviewing respondent's exhibit No. 2, the court concluded that respondent was current in his payments, although respondent had, in fact, paid the petitioner in lump sums rather than the weekly payments directed by the court's order.

The court entered a judgment order on July 21, 1989, in which it found that petitioner's claim for her expenses of pregnancy and delivery was time barred, and should not be awarded in any event because petitioner never made a demand upon respondent to pay these expenses. The court additionally held that the petitioner "has chosen to retain private counsel and she should pay her attorney fees." The court ordered respondent to pay retroactive child support at $200 per month for a 19-month period between August 1985 and April 1987, with credit for a $500 payment made in December 1988, and entered judgment for the retroactive child support in the amount of $3,300. However, the court stayed execution of its judgment until respondent graduates from college and is gainfully employed or until he enjoys his inheritance.

Petitioner appeals, contending (1) the trial court abused its discretion in denying attorney fees; (2) the trial court erred in awarding retroactive child support only for a period from August 1985 through April 1987; (3) the trial court did not award an adequate amount of child support for the retroactive period; and (4) the trial court did not have authority to stay execution of the retroactive support judgment.

I

■ Both section 9 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1359), which was in effect when the child was born, and section 17 of the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1985, ch. 40, par. 2517) provide for attorney fees. Section 17 of the Parentage Act provides:

> "Costs. Except as otherwise provided in this Act, the court may order reasonable fees of counsel, experts, and other costs of the action and pre-trial proceedings to be paid by the parties in proportions and at times determined by the court." Ill. Rev. Stat. 1985, ch. 40, par. 2517.

Effective January 1, 1989, section 17 of the Parentage Act (Ill. Rev. Stat. 1989, ch. 40, par. 2517) provides that payments are "to be paid by the parties in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act."

■ Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 508) provides for the award

"after considering the financial resources of the parties" so that "a party lacking sufficient financial resources" is able to obtain representation. We find this is basically a codification of existing case law.

■■ To justify an allowance of attorney fees, the party seeking relief must show financial inability to pay and the ability of the other party to pay. (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 572, 521 N.E.2d 621, 624.) A court may consider a party's prospective as well as his current income in setting maintenance or awarding attorney fees. *In re Marriage of Garelick* (1988), 168 Ill. App. 3d 321, 327, 522 N.E.2d 738, 742; *In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 263, 507 N.E.2d 71, 77.

■■ While the trial court appears to have given serious consideration to the financial circumstances of the parties, in relation to child support, the only specific reference to the award of attorney fees is as follows:

> "Attorney Myers' argument is well taken that Teresa could have [elicited] the aid of the Ford County State's Attorney to prosecute this cause for her. She has chosen to retain private counsel and she should pay her attorney fees. Thomas has also incurred attorney fees and he should pay same."

Petitioner objects and correctly contends that a decision based upon such a reason is erroneous. The statute entitling the mother to representation by a State's Attorney in a paternity action was intended to provide an alternative procedure to retaining private counsel, and does not preclude her from retaining private counsel and petitioning the court for the related attorney fees. (*Ivanyi v. Granoff* (1988), 171 Ill. App. 3d 411, 426, 526 N.E.2d 189, 200; *People ex rel. Adams v. Sanes* (1968), 41 Ill. 2d 381, 384, 243 N.E.2d 233, 235.) We determine that the trial court considered and based its decision upon an improper factor in making the determination as to attorney fees. This matter must be sent back for reconsideration by the trial court.

## II

Petitioner next contends that retroactive child support should have been awarded from the effective date of the Parentage Act, July 1, 1985. The trial court order setting retroactive support stated:

> "Thomas should pay retroactive child support to Teresa for nineteen months past at $200 per month. Thomas should be given credit for the $500 payment previously made. The aforementioned nineteen months encompasses [*sic*] the time period between August of 1985 and April of 1987. Thomas clearly had the ability to pay support during said period."

■ Prior to discussing this contention, we initially find it necessary to overrule a prior decision of our court in *People ex rel. Causley v. Jackson* (1988), 171 Ill. App. 3d 464, 527 N.E.2d 16. There, this court held that retroactive child support payments were not provided for by the Paternity Act. Our theory was that since the Paternity Act was controlling and the only remedies available to the petitioner were those in effect at the time of the child's birth, it was improper to allow retroactive child support, even though paternity was established under the Parentage Act. Since our opinion in *Causley*, the Second Appellate District has ruled on this to the contrary in *In re Paternity of Hubbard* (1989), 186 Ill. App. 3d 234, 542 N.E.2d 432. The additional analysis of the question in *Hubbard* leads us to now conclude that our decision in *Causley* was incorrect.

■ The evidence indicated respondent was working in Alaska between the middle of 1984 to June 1987. His income in 1985 was $24,351.70, which was the highest of any year from 1983 through 1987. The 19 months' support provided by the trial court evidently excluded August 1985 and April 1987. Retroactive child support is authorized by section 14(b) of the Parentage Act (Ill. Rev. Stat. 1985, ch. 40, par. 2514(b)), which provides:

"The Court may order any child support payments to be made for a period prior to the commencement of the action, including payments to reimburse any public agency for assistance granted on behalf of the child. In determining whether and the extent to which such payments shall be made for any prior period, the court shall consider all relevant facts, including the factors for determining the amount of support specified in the 'Illinois Marriage and Dissolution of Marriage Act,' approved September 22, 1977, as amended, and other equitable factors including but not limited to:

(1) the father's prior knowledge of the fact and circumstances of the child's birth;

(2) the father's prior willingness or refusal to help raise or support the child;

(3) the extent to which the mother or the public agency bringing the action previously informed the father of the child's needs or attempted to seek or require his help in raising or supporting the child;

(4) the reasons the mother or the public agency did not file the action earlier; and

(5) the extent to which the father would be prejudiced by the delay in bringing the action."

■■ It is apparent from the record and the trial court's July 21, 1989, order that the court gave consideration to the relevant factors. However, the evidence does not justify the failure to include July and August of 1985 when assessing the monthly retroactive payments. The facts as shown by the evidence were no different in July 1985 than they were in September 1985. The inferred expenses for the return to Illinois and the return to school in late spring of 1987 provide justification for the trial court's cutoff at that time. The award ordered for retroactive child support should have included the months of July and August 1985, and must be modified to so provide.

## III

■■■ Petitioner contends that the amount of the retroactive support was inadequate. The amount of the retroactive child support is to be determined by giving consideration to section 14(b) of the Parentage Act, which incorporates section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 505). (Ill. Rev. Stat. 1989, ch. 40, par. 2514(b).) The facts in the present case presented a somewhat difficult decision because of the unemployed student status of the respondent. The inheritance information was uncertain, as was the exact nature of the respondent's future employment. We note that, as of the date of the order appealed, both the Parentage Act and the dissolution act had been amended to add statutory provisions pertaining specifically to unemployed persons owing duty of support (see Ill. Rev. Stat. 1989, ch. 40, pars. 2515.1, 505.1). Under the dissolution act, the finding of the trial court as to the proper level of child support will not be reversed unless it is against the manifest weight of the evidence. (See, *e.g., In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 260, 547 N.E.2d 590, 596; *In re Marriage of Adams* (1988), 174 Ill. App. 3d 595, 617, 528 N.E.2d 1075, 1088; *Knox v. Knox* (1975), 31 Ill. App. 3d 816, 823, 334 N.E.2d 891, 896.) We conclude the same standard of review applies to awards under the Parentage Act.

## IV

The petitioner argues that the trial court lacked the authority to order execution stayed as to the judgment for retroactive support, until respondent "becomes employed on a full-time basis or receives his inheritance mentioned herein." We agree.

■■ Supreme Court Rule 305 provides courts the authority to stay enforcement of a judgment, pending appeal, upon the motion of the appellant. (107 Ill. 2d R. 305.) There is no provision in the supreme court rules granting courts authority to *sua sponte* stay enforcement

of a judgment at law until such time as the party against whom it is rendered is in a better position to comply with it.

Respondent cites *Pearce v. Miller* (1903), 201 Ill. 188, 66 N.E. 221, for the proposition that courts possess such equitable power to control their judgments. However, *Pearce* is distinguishable. In *Pearce*, the trial court entered a judgment by confession against the respondent on an overdue note. Respondent moved to quash execution of the judgment and requested leave to plead a defense. The trial court granted stay of execution of the judgment. The Illinois Supreme Court commented on the propriety of the trial court's stay of execution of its judgment:

> "In the exercise of equitable powers resting in the court in the control of judgments confessed on notes and bonds under powers of attorney, the superior court was authorized to hold the rights of the parties *in statu quo* until it had given consideration to the questions raised by the affidavits." *Pearce*, 201 Ill. at 190, 66 N.E. at 221.

■■ *Pearce* differs from the case before this court in two respects. First, the *Pearce* court stayed execution of its judgment in response to a motion by the respondent. The trial court in this case stayed execution *sua sponte*. More importantly, the narrow language of *Pearce* suggests that the court's holding is limited to its facts.

We know of no statutory or common law authority for the trial court's stay of execution of its order in this case.

The unfettered right to stay execution for monetary judgments invites problems. If petitioner wants to protect her interest by garnishment or other proceedings in the Alaskan estate proceedings, she should be allowed that opportunity.

The trial court order refusing the award of attorney fees is reversed and remanded for reconsideration based upon the dictates of this opinion. No additional hearing is necessary. The portion of the order that fixes the monthly amount of retroactive child support at $200 per month and provides for a credit of $500 is affirmed, but the denial of the retroactive support for July and August 1985 is reversed and, on remand, the judgment shall be increased by $400. The order staying execution is reversed.

Affirmed in part; reversed in part, and remanded with directions.

KNECHT, P.J., and GREEN, J., concur.