*In re* MARRIAGE OF ELAINE K. METZ, n/k/a Elaine K. Storto, Petitioner-Appellant, and MICHAEL A. METZ, Respondent-Appellee.

Second District   No. 2—91—1265

Opinion filed August 13, 1992.

Walter J. Donat, of Donat & Donat, P.C., of Batavia, for appellant.

William T. King, Jr., and Kurt A. Niermann, both of Presbrey & Amoni, P.C., of Aurora, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Elaine Storto (the mother), appeals from the judgment of the circuit court which granted the petition of respondent, Michael Metz (the father), to change custody of their minor child to him. The court also ruled on the mother's petition to revive the judgment against the father for child support arrearages. On appeal, the mother raises several issues: whether the trial court erred (1) when it

changed custody to the father; (2) in computing the amount of child support the mother owed to the father; (3) in failing to sentence the father to jail for contempt of court; and (4) in suspending payments on an arrearage until the minor child reaches emancipation.

This cause arose, in part, as a result of the father's successful efforts at avoiding his child support obligation over a 10-year period. The father sought custody of the daughter and support payments from the mother so that he would not have to make more support payments. The father had been found in contempt of court on three previous occasions as a result of his failure to pay child support.

First, we will summarize the facts relevant to the custody issue. The parties were married in 1974, and Melissa, their only child, was born on April 18, 1975. In September 1980, the mother filed a petition for dissolution of the marriage. On November 20, 1980, the trial court entered the judgment of dissolution, which awarded sole custody of the daughter to the mother. In June 1990, the mother and the daughter got into a heated argument which resulted in the mother bringing the daughter one day early for visitation with the father. The argument concerned the daughter's smoking, skipping school and wearing too much makeup. In the heat of anger, the mother, in effect, threw the daughter out of her house and told the daughter that the father could take care of her.

Near the end of that summer, the daughter requested to stay with the father. Believing that the daughter would be attending Aurora West high school, the mother agreed to allow the daughter to stay with the father. The mother hoped that by going to a different high school the daughter would forget her boyfriend at the school in Plano. However, the mother learned the daughter was still attending the school in Plano. When the mother informed the father of her intention to take the daughter back home with her, the father got an *ex parte* temporary restraining order to prevent the mother from taking the daughter. The father also filed a petition for a change of custody.

The court heard testimony at two hearings, one on August 22, 1991, the second on October 1, 1991. After considering the extensive evidence of the parties' relationship with the daughter, the court decided that it would be in the daughter's best interest for her to remain with the father. The court's decision was premised on its concern that, if the daughter was ordered to live with the mother, the daughter would rebel and might drop out of school or get pregnant to spite the mother.

The mother contends that the trial court erred in changing custody of the daughter to the father. While there is some merit to the

mother's contention that the father might not exercise sufficient supervision and control over the daughter, we cannot discount the court's reason for the change of custody.

A court may modify a custody judgment only if it finds by clear and convincing evidence that circumstances have changed and that modification is necessary for the best interests of the child. (Ill. Rev. Stat. 1991, ch. 40, par. 610(b).) There is a legislative presumption in favor of the present custodian which is designed to promote stability and continuity in the child's custodial relationships. (*In re Marriage of Valter* (1989), 191 Ill. App. 3d 584, 590.) If the court finds that the presumption is overcome, the trial court's determination is afforded great deference, since it had the opportunity to observe the witnesses' demeanor and to assess their credibility. *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 498-99.

■ The presumption in favor of the present custodian was overcome here because the daughter had been living with the father for a year. The changed circumstances were that the mother threw the daughter out of the house, and the daughter was angry with the mother. The daughter expressed a preference to live with the father. The court found that it would be in the daughter's best interests if custody were awarded to the father. In light of the age of the daughter, who is now 17 (see *Valter*, 191 Ill. App. 3d at 590), and the deterioration of the relationship between mother and daughter, we conclude that the trial court's decision to modify custody was not an abuse of discretion.

Before considering the remaining issues, we will summarize the facts regarding the child support arrearages. In 1980, when the trial court dissolved the marriage, it ordered the father to pay $40 per week for child support and to be responsible for all medical and dental care for the daughter. By May 1981, the father was $440 in arrears on his child support obligation. In October 1981, the mother filed a petition for a rule to show cause against the father because, among other things, the father was $745 in arrears for child support. The rule was continued in part because the father became unemployed. The court ordered the father to pay $25 per week for child support.

As of December 22, 1981, the father was $965 in arrears. The court entered judgment for the mother in that amount. The rule was dismissed on June 22, 1982.

In an agreed order, entered October 21, 1983, the parties agreed that the father's child support arrearage was $2,525, including the judgment amount. The order further provided that the amount of child support was increased to $75 per week.

The mother filed another rule to show cause on September 14, 1984, based on the father's failure to pay child support. The parties agreed that the arrearage, as of November 1, 1984, was $5,150. The father paid $1,500 in open court, leaving a balance due of $3,650. The court ordered the father to pay $100 per week: $75 for child support and $25 to remedy the arrearage.

In September 1985, the court reduced the father's support obligation to $45 per week until the father recovered from a disability. On October 29, 1985, the mother filed another petition for a rule to show cause. On the same date, the father filed a petition to modify the judgment of dissolution to suspend his support obligations while the father exercised a six-week visitation period with the daughter. On October 29, 1985, the court found the father in contempt and ordered him incarcerated for 10 days or until he purged himself of contempt by paying at least $1,735. The father failed to pay the requisite amount.

In June 1987, the mother filed another petition for a rule to show cause. The court issued the rule, in which it stated that the arrearage amount from October 1986 to June 19, 1987, was $2,925. On July 7, 1987, the court issued another rule to show cause, in which it stated that as of July 7 the arrearage was $4,000. On January 28, 1988, the court entered an agreed order which provided that child support was set at $40 per week, and the father was ordered to pay $20 per week for the arrearages.

On May 2, 1988, the court entered an order finding that "[a]s of 5/2/88, in addition to Judgments previously entered for child support arrearages, there appears to be due $4,525," and the father failed to pay anything for child support. The father was ordered to appear in court on May 17 for a hearing to show why he should not be held in contempt.

The father failed to appear, so the trial court entered a rule to show cause and found that the arrearage, as of May 16, 1988, was $4,605. The court set bond at $1,000 for the contempt charge. Evidently, the father left the State and did not return until early in 1990.

On August 9, 1990, the court remanded the father to the custody of the Kane County sheriff and continued the bond. The father posted bond and was released.

On December 20, 1990, the court again issued a rule to show cause. The order stated that as of December 19 the arrearage amount was $8,535. The matter was continued for a hearing in April 1991.

On March 26, 1991, the father filed a petition for change of custody and a petition for a temporary restraining order. In the latter

petition, the father alleged that the daughter had been residing with the father since June 1990 and that the mother threatened to remove the daughter from the father's possession if he took any action to obtain custody. The court issued the temporary restraining order.

On April 25, 1991, the court found the father in contempt of court, but stayed the sentence until the hearing on the modification of custody petition. The father subsequently filed a petition for a temporary abatement of his support obligation and requested that the mother be ordered to pay child support to him.

On May 22, the court revived the judgment of December 29, 1981, in the amount of $826 plus interest of $671.10. On that same date, the court set the arrearage amount at $10,750, but ordered that neither party would be obligated to pay support until further order.

Following a hearing on August 22, 1991, and another on October 1, the court found that the father owed an arrearage of $13,225, but that as long as the daughter resided with him, he would be credited $80 per week. The court further ordered that, when the daughter becomes emancipated, the court would entertain a petition for a judgment for monthly installments of the remainder of the arrearage owed to the mother. The mother's attorney objected to the amount of child support apportioned to her, stating:

> "Shouldn't the credit be in the amount of 20 percent of Mrs. Metz's net take-home, which I believe the evidence shows is $267?
>
> THE COURT: It will be on the basis of $80 a week. I think that is fair."

At that point, the hearing terminated.

The mother first contends that the trial court erred in computing the amount of child support she must pay to the father. Section 505 of the Illinois Marriage and Dissolution of Marriage Act sets forth the minimum payment guidelines for child support. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).) Under section 505, the court should order support in the amount of 20% of the supporting party's income for one child unless the court finds a reason to deviate from the guidelines and it makes express findings for doing so. (Ill. Rev. Stat. 1991, ch. 40, pars. 505(a)(1), (a)(2).) The mother argues that the trial court should have ordered her to pay $53.40 per week, which amounts to 20% of her net income. Instead, the court ordered her to pay $80 per week, or 30% of her net income, because the court believed "that is fair."

■ The father responds that the mother has waived this argument by failing to raise it in the trial court. We disagree. As the

above-quoted portion of the record demonstrates, the mother's counsel raised the question of the proper amount of the support, and the court stated that the amount it ordered was "fair." Thus, the mother has not waived the issue. The father makes no other argument in opposition to the mother's contention that the amount of child support should be reversed.

■ The determination of the proper amount of child support is within the trial court's discretion, which we will not disturb unless there was an abuse of that discretion. (*In re Marriage of Olson* (1992), 223 Ill. App. 3d 636, 651.) In general, the trial court should abide by the guidelines of section 505, and it need not consider the factors listed in section 505(a)(2) unless it deviates from the guidelines. (*In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093.) The trial court must make specific findings if its award deviates from the guidelines. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2); *Olson*, 223 Ill. App. 3d at 651.

■ The court did *not* make specific findings; therefore, if the award is more than 20% of the mother's net income, the record fails to support the court's exercise of discretion. The uncontroverted evidence establishes that the mother's net weekly income was $267. Since 20% of that amount is $53.40, and the trial court's only reason for setting the award at $80 per week was that the court felt that amount was "fair," we conclude that the court abused its discretion.

■ Next, the mother contends that the trial court erred in failing to sentence the father to jail as a sanction for his contempt of court. The father responds that this court does not have jurisdiction to consider the issue because a contempt finding is not final and appealable until the court imposes a sanction. See *In re Marriage of Ryan* (1989), 188 Ill. App. 3d 679, 682.

Although the father is correct that one cannot appeal a finding of contempt until a sanction is imposed (*Ryan*, 188 Ill. App. 3d at 682), it would appear a sanction was imposed, though not the one the mother wanted. The mother is requesting this court to order the trial court to impose an additional sanction of incarceration for a contempt of court.

Although civil contempt is designed to coerce the contemnor to comply with a court order for the benefit of the opposing litigant, "civil contempt is a punishment for an affront to the authority of the court," and, as such, the other party has no right to any fine imposed. (*In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 473.) Thus, it appears that the opposing litigant does not have standing to challenge the failure to impose incarceration as a sanction for civil contempt.

Even if the mother had standing to contest the failure to incarcerate the father, she has failed to establish an abuse of discretion. The power to punish for civil contempt rests within the trial court's sound discretion (*Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 114, *rev'd on other grounds* (1991), 145 Ill. 2d 32) and includes the power to impose no sanction. (*In re Marriage of Betts* (1988), 172 Ill. App. 3d 742, 746; see also *In re Marriage of Winton* (1991), 216 Ill. App. 3d 1084, 1088-89.) In the present cause, the trial court apparently decided not to impose incarceration as a sanction to coerce payment. The court fashioned a scheme whereby the arrearage would be decreased by offsetting the amount of child support the mother owed to the father. Thus, the trial court did not neglect to enter a sanction, and its decision not to incarcerate the father has not been shown to be an abuse of discretion. See *Betts*, 172 Ill. App. 3d at 746.

■ Finally, the mother contends that the trial court erred in staying enforcement of the judgment until the mother's support obligation terminates. The mother correctly notes that child support judgments are to be enforced as any other judgment. (Ill. Rev. Stat. 1991, ch. 40, par. 505(d).) The father responds that the court did not stay enforcement because she is entitled to a setoff of her support obligation.

The father's argument is without merit. Sections 12—176 and 12—177 of the Code of Civil Procedure provide that when judgments between the parties are to be set off, and one of the judgments is larger than the other, "the balance due on the larger judgment may be collected and paid in the same manner as if there had been no setoff" (Ill. Rev. Stat. 1991, ch. 110, par. 12—177). Thus, the mother is still entitled to enforce the balance of the judgment.

In *Milligan v. Cange* (1990), 200 Ill. App. 3d 284, the court considered a similar issue. The trial court in *Milligan* stayed enforcement of a child support judgment until the father became employed. The appellate court in *Milligan* recognized that Supreme Court Rule 305 (134 Ill. 2d R. 305) authorizes a trial court to stay enforcement of a judgment pending an appeal, but that rule did not apply, and there was "no statutory or common law authority for the trial court's stay of execution of its order." (*Milligan*, 200 Ill. App. 3d at 295.) The court reasoned that "[t]he unfettered right to stay execution for monetary judgments invites problems," and it concluded that the judgment creditor should be entitled to attempt to enforce the judgment. (200 Ill. App. 3d at 295.) Further, the court held that the trial court had no authority to stay the enforcement of the judgment *sua sponte*. (200 Ill. App. 3d at 295.) We agree with the basic rationale of *Milligan*, and we find it persuasive on these facts.

The only circumstances in which a court may stay a judgment are prior to a final disposition on general equitable grounds and pursuant to Rule 305, neither of which applies here. (See *Cahokia Sportservice, Inc. v. Illinois Liquor Control Comm'n* (1975), 32 Ill. App. 3d 801; *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1992), 148 Ill. 2d 348, 402-03.) If the court were concerned that the mother was unwilling or unable to make her support payments, the court could have considered the creation of a trust. (See *In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692.) However, we are not aware of any authority allowing the court to stay the enforcement of the judgment herein. Since the trial court lacked the authority to stay enforcement of the judgment, the mother is entitled to seek enforcement of the judgment. We therefore vacate the order staying enforcement of the judgment.

The order modifying custody is affirmed. The order awarding child support to the father is modified to $53.40 per week as a setoff, and the order staying enforcement of the mother's judgment for the child support arrearage is vacated.

Affirmed in part; modified in part; and vacated in part.

INGLIS, P.J., and DUNN, J., concur.