*In re* PARENTAGE OF JENNIFER MARIE JANSSEN, a Minor (Mary K. Janssen, Petitioner-Appellee, v. GARRY TURNER, Respondent-Appellant).

Fourth District No. 4—96—0922

Opinion filed September 9, 1997.—Rehearing denied October 21, 1997.

Paul E. Adami, of Mohan, Alewelt, Prillaman & Adami, of Springfield, for appellant.

Ronda D. Taylor Glenn, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

In this paternity action, respondent father Garry Turner (respondent) appeals from the judgment of the circuit court of McLean County. The action was commenced by Mary K. Janssen, the mother of Jennifer Marie Janssen (born May 2, 1991) on October 4, 1993. This court entertained an earlier appeal relating to visitation. *In re the Parentage of Janssen*, 282 Ill. App. 3d 1118 (1996) (unpublished order under Supreme Court Rule 23). The issues in this appeal are whether the trial court erred by (1) awarding retroactive child support to the date of birth; (2) setting the amount of current child support; (3) ordering respondent to pay all of petitioner's attorney fees; (4) directing respondent to provide life insurance on his life for the benefit of Jennifer; (5) directing respondent to pay for dependent medical insurance obtained by petitioner; and (6) directing respondent to pay for petitioner's pregnancy and delivery expenses. No issue is raised concerning the child's parentage. We affirm.

■ With regard to the issue of retroactive child support, respondent makes two arguments: (1) the relevant statute requires child support to be made retroactive only to the date of service of summons, not to the date of the child's birth; and (2) the awarding of retroactive child support to the date of birth in this case was an abuse of discretion or was against the manifest weight of the evidence. The trial court's order of October 10, 1996, directed respondent to pay child support at the rate of $1,500 per month, with support being retroactive to May 2, 1991. A judgment for retroactive child support was entered in the amount of $62,645, representing retroactive child support at $1,500 per month less a credit for $36,910 for child support payments made by respondent through October 1996. Respondent has waived any argument relating to any discrepancy in these calculations by failing to raise that issue on appeal.

■■ Section 14(b) of the Illinois Parentage Act of 1984 (Parentage Act) provides as follows:

"The court shall order all child support payments, determined in accordance with such guidelines, to commence with the date summons is served. The level of current periodic support payments shall not be reduced because of payments set for the period prior to the date of entry of the support order. The Court may order any child support payments to be made for a period prior to the commencement of the action. In determining whether and the extent to which the payments shall be made for any prior period, the court shall consider all relevant facts, including the factors for determining the amount of support specified in the Illinois Marriage and Dissolution of Marriage Act [(Marriage Act) (750

ILCS 5/101 *et seq.* (West 1994))] and other equitable factors including but not limited to:

    (1) The father's prior knowledge of the fact and circumstances of the child's birth.

    (2) The father's prior willingness or refusal to help raise or support the child.

    (3) The extent to which the mother or the public agency bringing the action previously informed the father of the child's needs or attempted to seek or require his help in raising or supporting the child.

    (4) The reasons the mother or the public agency did not file the action earlier.

    (5) The extent to which the father would be prejudiced by the delay in bringing the action.

For purposes of determining the amount of child support to be paid for any period before the date the order for current child support is entered, there is a rebuttable presumption that the father's net income for the prior period was the same as his net income at the time the order for current child support is entered." 750 ILCS 45/14(b) (West 1994).

Respondent's argument is, in essence, a request for this court to construe the statute.

"The cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 540-41, 605 N.E.2d 539, 542 (1992). The language of the statute is the best indicator of that intent, and aids for construing a statute will only be resorted to if the language of the statute is not clear. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994)." *Randall v. Wal-Mart Stores, Inc.*, 284 Ill. App. 3d 970, 972, 673 N.E.2d 452, 454-55 (1996).

Respondent does not contend the statute is ambiguous. Instead, he seems to argue that the first sentence of section 14(b) of the Parentage Act controls the remainder of the quoted portion of the statute. To hold as respondent suggests would ignore virtually the entire subsection and lead to an absurd result.

■ The language of section 14(b) indicates the legislature contemplated two categories of retroactive child support, both based on the guidelines referred to in section 14(a) of the Parentage Act (750 ILCS 45/14(a) (West 1994)) (referring to sections 505 and 505.2 of the Marriage Act (750 ILCS 5/505, 505.2 (West Supp. 1995) (text of section 505 eff. July 1, 1996))). The first sentence of section 14(b) of the Parentage Act states that child support "shall *** commence

with the date summons is served." 750 ILCS 45/14(b) (West 1994). This is the type of child support "arrearage" briefly discussed by this court in *People ex rel. Stockwill v. Keller,* 251 Ill. App. 3d 796, 800-01, 623 N.E.2d 816, 819-20 (1993). Under this provision, the trial court must make the child support retroactive at least to the date of service of summons. However, section 14(b) of the Parentage Act also allows for retroactive child support for a period prior to the commencement of the paternity action. Such an award rests within the discretion of the trial court, and child support, retroactive to the birth of the child, "may" be awarded. See *Carnes v. Dressen,* 215 Ill. App. 3d 166, 171-72, 574 N.E.2d 845, 848 (1991). Therefore, in this case, the award of child support retroactive to the child's birth was not violative of section 14(b) of the Parentage Act.

■ In light of the presumption in section 14(b) that respondent's income for the prior period was the same as his current income and the trial court's finding that child support should be set at $1,500 per month currently and retroactively, the issue of whether the trial court erred in setting retroactive child support is interrelated with the determination of the propriety of the current support award. The standard of review for a current or retroactive child support award in paternity cases is whether the award is an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence. *Gay v. Dunlap,* 279 Ill. App. 3d 140, 144-45, 664 N.E.2d 88, 92 (1996); *Milligan v. Cange,* 200 Ill. App. 3d 284, 294, 558 N.E.2d 630, 637 (1990).

■ In setting child support at $1,500 per month, the trial court found (1) respondent's net annual income for 1993, 1994, and 1995 was in excess of $205,000, resulting in a net monthly income of $17,000; (2) applying the 20% guideline would result in child support being set at $3,400 per month; (3) a deviation downward was warranted in this case for this child with no special needs; and (4) the trial court noted the language in *In re Marriage of Bush,* 191 Ill. App. 3d 249, 260, 547 N.E.2d 590, 596 (1989), in which respondent was one of the parties, but distinguished the case from the case at bar because petitioner's gross monthly income of $1,100 did not afford the advantages Jennifer should enjoy and was not sufficient to provide for the child's reasonable needs.

As already noted, section 14(a) of the Parentage Act specifies that child support be determined in accordance with sections 505 and 505.2 of the Marriage Act. Under section 505 of the Marriage Act, the minimum child support for one child is to be 20% of the supporting parent's net income. 750 ILCS 5/505(a)(1) (West Supp. 1995). However, deviation from the guideline is permitted after consider-

ation of the financial resources of the child, custodial parent, and noncustodial parent; the standard of living the child would have enjoyed if the parties had married; and the child's physical and emotional condition and educational needs. 750 ILCS 5/505(a)(2) (West Supp. 1995).

Respondent, an anesthesiologist, alludes to his financial affidavit, which reflected gross monthly income of $15,000 and net monthly income of $8,216 from employment, interest, and dividends. The trial court expressly found respondent's affidavit to be untrustworthy. "The credibility and forthrightness of the noncustodial parent in disclosing income is a factor to be considered in accepting evidence of net income." *In re Marriage of Olson*, 223 Ill. App. 3d 636, 652, 585 N.E.2d 1082, 1093 (1992). Even accepting for the sake of argument the $8,216 figure, 20% would provide Jennifer with $1,643.20 child support per month. However, respondent's argument does not focus on the trial court's findings relating to his income.

Respondent points to the fact that he is currently paying $800 per month in child support for another child as a result of the dissolution of his marriage. The trial court's order and written opinion referred to the prior child support obligation and noted that respondent's former wife was a doctor, remarried, and her gross monthly income was $7,200. *Bush*, 191 Ill. App. 3d at 253, 547 N.E.2d at 591-92.

Respondent has not demonstrated that the determination of $1,500 per month as child support for Jennifer was an abuse of discretion or against the manifest weight of the evidence. (Any error that may have occurred here was to the detriment of Jennifer.)

■ It is also argued that the retroactive child support is an abuse of discretion or against the manifest weight of the evidence for two reasons: (1) the application of the factors in section 14(b) of the Parentage Act weigh in respondent's favor and (2) the award of retroactive child support was a windfall to petitioner in the nature of a property settlement she might have received had the parties been married.

Respondent concedes he knew of the child's birth. He also contends he exhibited a willingness to raise the child, never refused to support her, and was only concerned about the amount of support needed. Petitioner testified she had been receiving $650 per month from respondent during the year prior to the December 29, 1995, hearing. They had not discussed how to pay Jennifer's medical bills not covered by insurance. Any money respondent paid for medical bills was included in the child support checks, with notations on the face of the check.

On the evidence presented, the record shows that respondent knew of the child's birth; participated in the child's support, but only to the extent he saw fit; petitioner tried to work out an agreement with respondent before filing suit and did not file suit earlier in the hope of working out an agreement and because of respondent's anger; and respondent was not prejudiced by the delay in bringing the suit.

We reject the argument that the judgment for retroactive child support was a windfall.

Section 14(b) of the Parentage Act incorporates section 505 of the Marriage Act. *Milligan*, 200 Ill. App. 3d at 294, 558 N.E.2d at 636. The failure to order child support to relate back to the child's date of birth encourages delay tactics and defeats the intent of the legislature. *Carnes*, 215 Ill. App. 3d at 171-72, 574 N.E.2d at 848. The legislature intended that the child be provided for within the guidelines set in section 505 of the Marriage Act. The award of retroactive child support in this case was not an abuse of discretion or against the manifest weight of the evidence.

■ In a series of orders relating to attorney fees, the trial court ordered respondent to pay $28,306.46 of petitioner's total attorney fees and costs of $32,506.46, including those related to the first appeal. Section 17 of the Parentage Act authorizes the trial court to order respondent to pay some or all of petitioner's attorney fees and costs after considering the factors specified in section 508 of the Marriage Act (750 ILCS 5/508 (West 1994)). 750 ILCS 45/17 (West 1994). The award of attorney fees will not be reversed absent an abuse of discretion. *Pacheco v. Silva*, 194 Ill. App. 3d 620, 623, 551 N.E.2d 316, 318 (1990). To justify an attorney fee award, a party must demonstrate a financial inability to pay and the ability of the other party to do so. *Pacheco*, 194 Ill. App. 3d at 622, 551 N.E.2d at 318.

Respondent argues that petitioner has the assets to pay a greater portion of her attorney fees. He refers to petitioner's condominium, automobile, stock, farm interest, and the fact that petitioner refinanced the condominium and the car extensively to pay for attorney fees. Respondent acknowledges petitioner had already paid a portion of her attorney fees.

"Financial inability exists when payment would strip a party of his or her means of support and would undermine his or her economic stability, but it does not require the party to show destitution." *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 832, 597 N.E.2d 847, 866 (1992). The trial court's finding that petitioner did not have the financial ability to pay all of her attorney fees is supported by the evidence. The awards of attorney fees were not an abuse of discretion.

■ The next issue concerns the trial court's directing that respondent provide life insurance for the benefit of Jennifer. The trial court ordered respondent to provide an insurance trust with a death benefit of $300,000 for the benefit of Jennifer, which respondent must maintain until excused by court or Jennifer attains 21 years of age, at which time respondent becomes sole owner. Section 14(a)(1) of the Parentage Act provides in relevant part:

> "The judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, which the court shall determine in accordance with the relevant factors set forth in the [Marriage Act] and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child. *** Specifically, in determining the amount of any child support award, the court shall use the guidelines and standards set forth in subsection (a) of Section 505 and in Section 505.2 of the [Marriage Act]." 750 ILCS 45/14(a)(1) (West 1994).

Although sections 505 and 505.2 of the Marriage Act do not refer to life insurance, section 14(a)(1) of the Parentage Act only limits the determination of the "amount" of child support to the guidelines in those sections. Requiring life insurance is not a determination of the "amount" of child support, but is related to the method of payment of child support obligation in the event of death. Under the first sentence of section 14(a)(1) of the Parentage Act, other provisions of the Marriage Act may be utilized to justify the trial court's requiring life insurance in this case. Section 510(d) of the Marriage Act provides that the obligation for child support does not terminate on the death of the parent obligated to support or educate the child. 750 ILCS 5/510(d) (West 1994). As a result, the requirement that the obligated parent maintain a life insurance policy on his life for the benefit of the child has been upheld. *In re Marriage of Dulyn*, 89 Ill. App. 3d 304, 312, 411 N.E.2d 988, 994-95 (1980).

The argument that this portion of the trial court's order creates a trust without a specific finding relating to his unwillingness to pay support is also without merit. Section 503(g) of the Marriage Act allows the court to require the creation of a trust where necessary for the protection and promotion of the child's best interests. 750 ILCS 5/503(g) (West 1994); *In re Marriage of Bates*, 141 Ill. App. 3d 566, 571, 490 N.E.2d 1014, 1017 (1986). A demonstrated unwillingness to make direct child support payments may justify the creation of such a trust (*In re Marriage of Rochford*, 91 Ill. App. 3d 769, 782, 414

N.E.2d 1096, 1106-07 (1980)), but there may be other reasons that would support the creation of such a trust, and section 503(g) of the Marriage Act is not limited to circumstances wherein the supporting parent is unwilling to make direct child support payments. In *Bush*, this court reversed the portion of the judgment requiring the creation of a trust. However, in that case, we did so, not on the basis of unwillingness on the part of respondent to make direct support payments, but because the creation of a trust fund for payment of arrearages deprived the ex-wife of a vested right to those funds and did not allow the use of the corpus during minority. *Bush*, 191 Ill. App. 3d at 258-62, 547 N.E.2d at 595-97. No finding of special circumstances is necessary to support an order directing respondent to maintain life insurance on his life for the benefit of Jennifer (*Olson*, 223 Ill. App. 3d at 650-51, 585 N.E.2d at 1092), and no abuse of discretion has been demonstrated in this case regarding the life insurance policy requirement.

■ The next issue is whether it was an abuse of discretion for the trial court to order respondent to reimburse petitioner for the cost of health insurance coverage for Jennifer and to keep in full force and effect the health insurance policy he currently had covering Jennifer. The judgment directs respondent to reimburse petitioner for premiums paid within 14 days of receiving from her a copy of a receipt for her payment. Section 505.2 of the Marriage Act allows for the trial court to order respondent to provide health insurance through a group or independent plan. 750 ILCS 5/505.2(b)(1) (West Supp. 1995). The trial court may also order him to pay deductibles and copayments. 750 ILCS 5/505.2(b)(3) (West Supp. 1995). When the parent owing a duty of support fails to provide or maintain health insurance pursuant to a court order, that parent is liable to the other party for premiums not paid and medical expenses of the minor that would have been paid or reimbursed by the court-ordered health insurance. 750 ILCS 5/505.2(d) (West Supp. 1995).

The respondent argues that because he is providing health insurance for Jennifer, under section 505.2 of the Marriage Act, he cannot be ordered to pay petitioner for the health insurance premiums for the health insurance policy she also carries on Jennifer. We have reviewed the evidence, the judgment entered by the trial court on October 10, 1996, and respondent's motion to reconsider and the hearing thereon of October 22, 1996. Neither the judgment entered nor the motion to reconsider suggests that respondent's health insurance policy was considered. Respondent had an obligation to bring this to the attention of the trial court at the hearing on entry of judgment on October 10, 1996, and certainly in his motion for reconsidera-

tion. The issue is waived. As to the issue of health insurance, similar to any other adjudged issue, it may be modified upon proper petition and change of circumstance. We hasten to add the parties have presently spent some $50,000 for attorney fees. That should be an attention-getter encouraging them to resolve issues amicably.

■ The final issue is whether the trial court properly ordered respondent to pay the expenses of petitioner's pregnancy and delivery in an action brought more than two years after the birth of the child. Respondent argues, for the first time on appeal, that such a recovery by petitioner is barred by the limitation provisions in sections 8 and 14 of the Parentage Act. 750 ILCS 45/8(a)(1), (a)(2), 14(a)(1) (West 1992); 750 ILCS 45/14(a)(1) (West 1994).

This action was commenced on October 4, 1993, when petitioner filed a petition to determine the existence of the father and child relationship on behalf of Jennifer. In that petition, petitioner asked for "reasonable expenses of the mother's pregnancy and delivery" as part of the relief sought.

That a cause of action is barred by a statute of limitations is an affirmative defense. *Paxson v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912, 924, 658 N.E.2d 1309, 1317 (1995). The limitations affirmative defense is a procedural one that may be waived if not raised in the trial court. *Greene v. Helis*, 252 Ill. App. 3d 957, 962, 625 N.E.2d 162, 166 (1993); *Goldman v. Walco Tool & Engineering Co.*, 243 Ill. App. 3d 981, 989, 614 N.E.2d 42, 48 (1993). Here, respondent did not plead the affirmative defense in his original answering pleading. Nor did respondent attempt to amend his pleading to raise the limitations defense. See *Behr v. Club Med, Inc.*, 190 Ill. App. 3d 396, 407, 546 N.E.2d 751, 759 (1989). No argument as is now raised on appeal was made to the trial court at the time of the evidentiary hearing or during closing argument. Nor was the issue included in the posttrial motion filed by respondent. This issue, having never been raised in the trial court, is deemed waived. *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 77, 491 N.E.2d 1160, 1162 (1986); *Village of Long Grove v. Austin Bank*, 268 Ill. App. 3d 70, 77, 644 N.E.2d 456, 460 (1994).

In his reply brief, respondent argues that a defense that a claim fails to state a cause of action can be raised for the first time on appeal. The argument is waived because it was raised for the first time in the reply brief in violation of Supreme Court Rule 341(e)(7). 155 Ill. 2d R. 341(e)(7). To address respondent's contention would require this court to speculate as to the nature of the arguments that could have been made, but were not. Therefore, we decline to address the contention that respondent has not waived this issue because he was

attacking the sufficiency of the cause of action. *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 362, 630 N.E.2d 121, 130 (1994).

For the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.