THE VILLAGE OF LONG GROVE, Plaintiff-Appellee, v. AUSTIN BANK OF CHICAGO, Defendant-Appellant (Robert R. Krilich, Intervenor-Appellant).

Second District    No. 2—93—1357

Opinion filed December 13, 1994.—Rehearing denied January 25, 1995.

Edward M. White, Edmund P. Boland, and James F. White, all of Carey, Filter, White & Boland, of Chicago, for appellant Robert R. Krilich.

Ronald R. Rassin, of Robbins, Salomon & Patt, Ltd., of Chicago, for appellant Austin Bank of Chicago.

John M. Mullen, of Libertyville, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Austin Bank of Chicago (Bank), and Robert R. Krilich, defendant-intervenor (herein referred to collectively as defendants), appeal the judgment of the trial court granting summary judgment to the Village of Long Grove (Village) regarding payment on a letter of credit issued to the Village by the Bank on Krilich's behalf. Defendants contend the trial court erred in finding that the Village is entitled to the proceeds of the letter of credit despite the

failure of the underlying agreement between the Village and Krilich, erred in awarding prejudgment interest on the full value of the letter of credit, and erred in awarding attorney fees. We affirm.

In January 1989, the Village enacted an ordinance giving final approval to Krilich for a development to be called the Saddle Club on land known as the Gridley farm property. The ordinance provided in pertinent part that Krilich would build requisite roadways and would landscape the development within two years of final planned unit development approval. The ordinance further required, in accordance with Village policy, that Krilich post a letter of credit or other surety in an amount equal to 150% of the estimated cost of the required common improvements. This surety was to be released in stages as the phases of the development were completed. Under the terms of the ordinance, no building permits would be issued until approval by the Lake County health department and the Village of planned on-site waste disposal systems. Pursuant to the ordinance, Krilich established a $750,000 letter of credit at the Bank in favor of the Village.

With the Village's permission, site preparation was begun by Riverwoods Development Corporation, a land trust of which Krilich was the beneficiary. Soon thereafter, Lake County health department officials inspected the site. The health department found the site unsuitable for the installation and maintenance of proposed underground waste systems and refused to issue septic permits. As a result, the site is not suitable for residential development. Krilich asked the Village to be excused from the obligation to install the streets and landscaping, but the Village refused. Krilich continued the landscaping and common area development, apparently to prevent the Village from demanding payment on the letter of credit. Krilich ceased construction in August 1990 as a result of a rainwater drainage dispute with adjacent landowners. After a new engineering plan was approved by the Village, Krilich resumed construction in January 1991.

On February 1, 1991, at the expiration of the two-year time limit imposed by the ordinance, the Village made a payment demand on the Bank for $750,000 pursuant to the letter of credit. The Bank failed to respond to the demand within the statutory three-day period, or apparently during the succeeding several weeks. In March 1991 Krilich was granted a temporary restraining order (TRO) enjoining the Bank from tendering and the Village from collecting payment on the letter of credit. The underlying complaint was dismissed on June 26, 1991, and the TRO was dissolved. Apparently at the Bank's request, the Village then made a second demand for

the full amount of the letter of credit on July 10, 1991. The Bank again refused to honor the demand.

The Village filed suit against the Bank on August 1, 1991. Krilich and Riverwoods each sought leave to intervene, which was denied by the trial court. Summary judgment was entered for the Village and an appeal ensued. We reversed the trial court's denial of the petitions to intervene. Citing the possible application of the fraud defense based on the allegations in the intervention petitions, we remanded the case for reconsideration. Upon remand Krilich was granted leave to intervene. Riverwoods had dissolved in the interim and thus did not re-petition to intervene. Krilich responded to the Village's motion for summary judgment and asserted as an affirmative defense the failure of the underlying contract between himself and the Village. He did not elaborate on the fraud allegations in his petition except to allege that the Village's attempt to collect on the letter of credit was manifestly unjust given the failure of the underlying development agreement. Krilich appended to his answer an engineer's affidavit stating that the total cost to complete the required improvements was $161,700. The Village responded with its own engineer's affidavit estimating the cost at approximately $500,000.

The trial court again granted the Village's motion for summary judgment and ordered the Bank to pay the Village $837,266.03, which was described as representing the face amount of the letter of credit plus prejudgment interest. The court subsequently granted in part the Village's fee petition and awarded an additional $38,825.30. It is from those orders that this appeal is taken.

This court reviews a summary judgment *de novo*. (*Wiseman-Hughes Enterprises, Inc. v. Reger* (1993), 248 Ill. App. 3d 854.) Our function is to determine whether the trial court correctly found that there were no genuine issues of material fact and, if there were not, whether the trial court correctly entered judgment as a matter of law based upon the pleadings, depositions, admissions, and affidavits on file. Summary judgment is proper where no genuine issue of material fact exists and the question before the court is solely a matter of law. 735 ILCS 5/2—1005 (West 1992); *Guenther v. G. Grant Dickson & Sons, Inc.* (1988), 170 Ill. App. 3d 538.

■ To understand the essence of a letter of credit transaction, it is imperative to focus on the unique nature of this type of security device. The court in *Jupiter Orrington Corp. v. Zweifel* (1984), 127 Ill. App. 3d 559, explained that three separate contracts are involved in this sort of agreement. The first is the contract between the beneficiary and the customer (here, the Village and Krilich), which is the contract underlying the letter of credit. The second is between the

customer and the bank, when the customer offers collateral in exchange for the bank's issuance of a letter of credit. The third contract is between the bank and the beneficiary, wherein the bank agrees to pay the beneficiary an amount stated when and if the beneficiary complies with the terms cited in the letter of credit. (*Jupiter*, 127 Ill. App. 3d at 562.) As in the *Jupiter* case, the type of letter of credit at issue here is a standby letter of credit, which obligates the bank to pay the beneficiary upon presentation of the requisite documents indicating a default. *Jupiter*, 127 Ill. App. 3d at 562.

■ The general rule, known as the independence principle, posits that if the documents presented conform to the requirements stated in the letter of credit, the bank may not look to the underlying contract between the customer and the beneficiary in determining whether to honor the demand. This rule is firm in that it requires the bank to pay the beneficiary even if the beneficiary breached the underlying agreement, so long as the breach was not fraudulent. (*Jupiter*, 127 Ill. App. 3d at 562.) This rule is codified in the Uniform Commercial Code, which states:

> "(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract *** between the customer and the beneficiary." 810 ILCS 5/5—114(1) (West 1992).

This rule was developed to protect the commercial viability of letters of credit and was described by a Federal court as "[t]he promise and premise [of] 'pay now, argue later.' " (*Eakin v. Continental Illinois National Bank & Trust Co.* (7th Cir. 1989), 875 F.2d 114, 116.) To hold otherwise would destroy the unique commercial usefulness of the letter of credit as a vehicle of rapid and guaranteed payment in commercial transactions. *Stringer Construction Co. v. American Insurance Co.* (1981), 102 Ill. App. 3d 919, 923.

■ One narrow exception to this rule has been recognized in Illinois. Where fraud in the formation or *in factum* can be found in the underlying contract, the bank is permitted to dishonor the demand for payment. (See 810 ILCS 5/5—114 (West 1992).) Courts have repeatedly interpreted this exception to mean that the fraud must be so significant as to vitiate the entire underlying transaction. See *Stringer*, 102 Ill. App. 3d at 924.

■ Defendants initially argue that the trial court somehow failed to follow our instructions on remand, when it again granted summary judgment to the Village after allowing Krilich to intervene and submit his answer. We do not conclude that the trial court failed to give proper consideration to Krilich's argument. Rather, we find that

the trial court properly found that Krilich's so-called affirmative defense was in fact not a defense at all to the Village's demand for payment on the letter of credit. Upon his entry into this case, Krilich offered only the failure of the underlying contract between himself and the Village and offered no direct evidence that the Village had committed any sort of fraud. He instead appears to argue that the Village's use of the failure of the underlying agreement to make demand on the letter of credit in itself amounts to fraud since his performance on the underlying agreement may be excused by impossibility. He appears to argue that if the trial court had properly followed our direction, it would necessarily have found fraud. In our order, however, we held only that Krilich's petition to intervene pleaded sufficient facts to *raise the question* of fraud, and thus we determined that he should be afforded an opportunity to offer a defense to the Village's demand. We specifically noted:

> "While generally the bank is not permitted to inquire into the underlying transaction, a narrow exception to the so-called 'independence rule' exists where there is evidence of fraud on the part of the beneficiary. [Citations.] While the exception is unquestionably a narrow one, the allegations of the petition to intervene are arguably sufficient to raise this issue. *We emphasize that we express no opinion on the ultimate merits of this issue. We merely decide that the petitioners have raised a potentially meritorious issue and should [be] given an opportunity to develop their theory in the trial court.*" (Emphasis added.) See *Village of Long Grove v. Austin Bank* (1992), Nos. 2—92—0189 & 2—92—0193 cons., at 11-12 (unpublished order under Supreme Court Rule 23).

■ Krilich next argues that the trial court erred in granting summary judgment for the Village. His contention appears to be twofold. First, he argues that a genuine issue of material fact exists as to whether he is in fact obligated to the Village under the terms of the ordinance and, if he is, as to the actual cost of the required improvements. Second, he insists that the mere failure of the underlying contract must somehow equitably release the Bank from liability on the letter of credit. The first of these contentions is irrelevant to the particular issue at hand, and the second is directly contrary to virtually all Illinois law regarding obligations arising under letters of credit. We believe the seventh circuit's succinct "pay now, argue later" description illuminates the point on which we must focus to resolve this case.

As we noted, letter of credit transactions actually involve three separate contracts. In the instant case, only the contract between the Bank and the Village is before this court. We granted Krilich leave

to intervene on the sole premise that he might be able to offer facts which would give rise to the one recognized exception to the Bank's otherwise absolute duty to pay. He failed to bring forth any facts which give rise to a conclusion that the Village committed fraud *in factum* or fraud in the formation of the underlying contract. He does not offer that the Village knew that the land was unsuitable for building. Rather, he argues that it is inequitable for the Village to insist on holding him to his bargain and posits that, if he is equitably discharged from performance, the Bank must necessarily be likewise discharged. To follow that logic would effectively emasculate the purpose and value of letters of credit in commercial transactions. Courts would then be likewise obligated to excuse performance on letters of credit due to similar occurrences such as financial failure of the entity on whose behalf the letter was issued. Such circular logic begs the question of why beneficiaries require letters of credit in the first place—to eliminate the risk of loss to themselves should the party with whom they contract breach the agreement. Krilich's arguments address only his duty of *performance* under his contract with the Village. (See *Jupiter*, 127 Ill. App. 3d at 564.) That contract is not before this court. We considered it only to determine that no fraud existed which would have excused the Bank's failure to pay. Finding none, we do not consider that transaction further. Consequently, the only excuse offered for the Bank's dishonor of the Village's demand fails, and we conclude that the trial court properly granted summary judgment for the Village. That Krilich may have a claim against the Village under the terms of their separate contract is not now before this court.

This conclusion is in conformance with the vast weight of Illinois case law on the subject of letters of credit. See *Professional Modular Surface, Inc. v. Uniroyal, Inc.* (1982), 108 Ill. App. 3d 1046 (the trial court erred in granting an injunction restraining payment on an unconditional letter of credit on the basis of an alleged breach of the underlying contract); *Stringer*, 102 Ill. App. 3d 919 (absent fraud, the bank may not look to the underlying contract when demand is made on a letter of credit); *Mount Prospect State Bank v. Marine Midland Bank* (1983), 121 Ill. App. 3d 295 (the obligation of the bank issuing a letter of credit is independent of the underlying contract between the customer and the beneficiary); *Newcastle Properties, Inc. v. Shalowitz* (1991), 221 Ill. App. 3d 716 (a standby letter of credit requires the issuer to pay the beneficiary a sum certain upon presentation of the specified documents demonstrating that the customer has defaulted); *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403 (the issuer of a letter of credit is not authorized to assert any defen-

ses which the customer may have to the underlying contract when presented with a proper demand for payment); *Pioneer Bank & Trust Co. v. Seiko Sporting Goods, U.S.A. Co.* (1989), 184 Ill. App. 3d 783 (the letter of credit is independent of the underlying contract, and when the documents presented comply with the conditions specified in the letter of credit, the issuer is authorized and obligated to pay).

■ We next turn to the defendants' contention that the award of prejudgment interest was error and "manifestly inappropriate." We first note that the Village argues that the defendants have waived this issue by not properly raising it before the trial court. The Village correctly contends that the failure to raise an issue below precludes its assertion on appeal. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77.) We do not find that the issue was properly preserved, as it was raised only in a motion to reconsider which was withdrawn before it was ruled upon by the trial court. See 735 ILCS 5/2—1003 (West 1992).

Even if, *arguendo*, we were to conclude that the issue was not waived, since we have already found that the Village is entitled to the entire $750,000, we conclude that it is also entitled to 5% per annum prejudgment interest under the Interest Act, which provides that prejudgment interest may be awarded where the amount due is fixed and readily ascertainable. (815 ILCS 205/2 (West 1992).) For the reasons stated, we find as a matter of law that no dispute existed as to the amount due under the letter of credit. Consequently, interest began to accrue from the date the demand was made. *Stathis*, 115 Ill. App. 3d at 416.

■ Finally, the defendants contend that the trial court erred in awarding attorney fees to the Village. An attorney fee award is a matter properly left to the sound discretion of the trial court, and its decision will not be disturbed unless it resulted from an abuse of discretion. *Board of Education of the Aptakisic-Tripp School District No. 102 v. County of Lake* (1987), 156 Ill. App. 3d 1064, 1067-68.

We note that under the terms of the letter of credit, the Bank agreed to be responsible for the Village's attorney fees should the Bank be found by a court to have impermissibly dishonored the Village's payment demand. Consequently, the thrust of the defendants' argument goes only to the sufficiency of the Village's fee petition.

The trial court conducted a detailed evidentiary hearing on the plaintiff's fee petition, including protracted cross-examination by defense counsel. Following the evidentiary hearing, the trial court conducted several off-the-record discussions with counsel. The court then announced that without repeating everything that had been said, it would enter a finding awarding $38,825.30 in attorney fees to the plaintiff.

Our review of the record indicates that the trial court gave ample consideration to the issues raised by the defendants before making the award of attorney fees. By the terms of its order, the court simply disagreed with defendants' contentions regarding the sufficiency of the petition. Our review of the record indicates the court did not abuse its discretion in determining that the petition was sufficient. Further, despite the fact that the trial court declined to itemize the award for the record, we conclude from the totality of the circumstances that the award was reasonable for complex litigation of this sort. We find no abuse of discretion in the trial court's award of $38,825.30 in fees and costs.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

INGLIS, P.J., and McLAREN, J., concur.