NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 230085-U

NO. 4-23-0085

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 27, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* | ) | Appeal from the |
| THE DEPARTMENT OF NATURAL RESOURCES, | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Sangamon County |
| v. | ) | No. 19L2 |
| REGIONS BANK, | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court reversed the trial court's judgment in favor of plaintiff where the letter of credit at issue did not contain an "evergreen" provision that renewed the letter indefinitely.

¶ 2     In this breach of contract case, defendant, Regions Bank (Regions), appeals from an agreed order entering a judgment of $320,608 in favor of plaintiff, the Department of Natural Resources (DNR), following the trial court's denial of Regions's motion to dismiss. In denying the motion to dismiss, the court found that the contested letter of credit contained an "evergreen" provision that renewed the letter indefinitely because neither Regions nor its predecessors tendered a notice of nonrenewal to DNR. For the reasons that follow, we reverse the court's judgment and hold that the letter's renewal clause was not an evergreen provision, and thus, the letter was no longer in force when DNR attempted to draw on it in 2016.

¶ 3                                                      I. BACKGROUND

¶ 4            On October 25, 1984, DNR issued a permit to Surefire Coal, Inc. (SCI). At the time, the Illinois Administrative Code required SCI to obtain a performance bond in an amount determined by DNR. 62 Ill. Adm. Code §§ 1806.11, 1806.12, amended at 6 Ill. Reg. 1 (eff. June 1, 1982) (repealed at 11 Ill. Reg. 8049 (eff. July 1, 1987)). This bond was intended to assure completion of the reclamation plan specified in the permit if DNR had to perform the work in case of forfeiture. Ill. Rev. Stat. 1979, ch. 96 ½, ¶ 7906.02. Irrevocable letters of credit issued by a bank were accepted as collateral for a bond. 62 Ill. Adm. Code § 1806.12(g), amended at 6 Ill. Reg. 1 (eff. June 1, 1982) (repealed at 11 Ill. Reg. 8049 (eff. July 1, 1987)). DNR provided a form letter of credit for banks to use as a template.

¶ 5            On December 12, 1985, Regions's predecessor, First National Bank of Wood River (First National Bank), issued a letter of credit for $320,608 at SCI's request, using DNR's form letter. The letter authorized DNR to draw on the issuing bank if SCI's acts or failures to act warranted forfeiture of the letter of credit. Pertinent to this appeal, the letter provided:

> "This Letter of Credit will automatically extend for an additional term of One (1) year unless [First National Bank] provides at least ninety (90) days notice prior to the expiration date that it does not wish to extend the Letter of Credit for an additional period. [DNR] has the right to draw this Irrevocable Letter of Credit in the event [SCI] does not replace this Irrevocable Letter of Credit prior to thirty (30) days before the expiration of this Irrevocable Letter of Credit with a replacement bond that complies with [DNR] Regulations, pursuant to 62 Ill. Admin. Code 1806.12(c) [(1982)] and/or 62. Ill. Admin. Code 1808.13 [(1985)]."

Neither First National Bank nor any of its successors provided a nonrenewal notice.

¶ 6        On June 16, 2016, DNR presented a sight draft to Regions, demanding payment of $320,608 under the letter of credit because SCI defaulted on its mining obligations when it was involuntarily dissolved in 2005. Regions dishonored the draft and refused payment on the grounds that (1) the letter of credit renewed automatically on December 12, 1986, for an additional one-year period and then expired on December 12, 1987, and (2) DNR's presentation did not comply with the terms and conditions of the letter of credit. On July 14, 2016, DNR presented a second sight draft to Regions, correcting the deficiencies that Regions noted. Regions again refused to pay, asserting that the letter of credit expired on December 12, 1987.

¶ 7        On January 7, 2019, DNR sued Regions for breach of contract for nonpayment under the letter of credit, alleging that the letter had not expired because its terms contained an evergreen clause that "automatically renewed year after year unless [First National Bank] provided notice" of nonrenewal. On March 7, 2019, Regions filed a motion to dismiss the complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2018)), arguing that the letter of credit expired on December 12, 1987, and DNR's failure to make a complying presentation on or before that date precluded relief.

¶ 8        The trial court denied the motion to dismiss on August 5, 2019. The court found that the letter of credit contained a valid evergreen clause; thus, the letter did not expire two years after it was issued and DNR stated a valid claim against Regions for breach of contract. The court reasoned that the

> "lack of an explicit expiration date in the letter of credit at bar, coupled with the required action by Regions to provide a 90-day notice of non-renewal prior to the expiration date, means that the expiration date is extended each and every year Regions fails to provide a notice of non-renewal."

¶ 9 On January 12, 2023, the parties filed a joint motion for the entry of a final judgment on DNR's complaint. The parties asked the trial court to enter a judgment in favor of DNR for the principal amount of $320,608, without prejudice to Regions's right to appeal. The court granted this joint motion on January 17, 2023, and entered the judgment proposed by the parties.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 A. Jurisdiction

¶ 13 We must first ascertain whether we have jurisdiction over this appeal, "regardless of whether either party has raised the issue." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009).

¶ 14 DNR is correct that an appellate court typically "will not review a consent decree, because a decree entered by consent is no more than a court's recording of an agreement reached by the parties in settlement of a dispute or claim and is not a judicial determination of their rights." *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Ass'n*, 106 Ill. 2d 1, 8 (1985). Here, however, Regions appeals the agreed order only insofar as it incorporated and made appealable the trial court's denial of Regions's motion to dismiss.

¶ 15 When the trial court denied Regions's motion to dismiss, it ruled on the dispositive legal issue of the case—whether the letter of credit was still in force. However, as the denial of a motion to dismiss is an interlocutory order, Regions could not appeal it at that time. *Mund v. Brown*, 393 Ill. App. 3d 994, 996 (2009). The only remaining matter was the amount of the judgment, which was an undisputed issue given the court's ruling on the motion to dismiss. The agreed order addressed this and, thus, constituted the final, appealable order in this case.

¶ 16 Regions's appeal from the agreed order incorporates the trial court's denial of the

motion to dismiss, as "[a]n appeal from a final judgment draws into question all earlier nonfinal orders that produced the judgment." *Pekin Insurance Co. v. Pulte Home Corp.*, 344 Ill. App. 3d 64, 67-68 (2003). Regions does not otherwise challenge the agreed order. Illinois courts have previously allowed similar appeals where an agreed order or consent decree was the final order acting as a conduit for appellate review of prior interlocutory orders. See, *e.g.*, *Philadelphia Indemnity Insurance Co. v. Gonzalez*, 2024 IL App (1st) 230833, ¶¶ 15-17 (appeal from the consent judgment determining damages allowed appellate review of the trial court's prior denial of a motion to dismiss and grant of a motion for summary judgment); *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 304 (2008) (appeal from the agreed order of dismissal with prejudice allowed appellate review of the trial court's prior interlocutory order dismissing the case without prejudice); *In re Custody of C.C.*, 2013 IL App (3d) 120342, ¶¶ 54-55 (appeal from the agreed order of visitation allowed appellate review of the trial court's prior interlocutory denial of the motion regarding child support). We thus have jurisdiction over the agreed order to the extent it draws into question the court's denial of Regions's motion to dismiss.

¶ 17                                B. Validity of Letter of Credit

¶ 18        The only disputed issue on appeal is whether the letter of credit renewed indefinitely under an evergreen provision or only once before expiring in 1987. Regions contends that the letter only renewed once, while DNR argues it renewed indefinitely and is still in force today, as neither Regions nor its predecessors tendered a notice of nonrenewal to DNR.

¶ 19        A motion to dismiss under section 2-619(a)(9) "affords a means of obtaining *** a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." (Internal quotation marks omitted.) *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Such a motion asserts that the

claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2018)) but otherwise "admits the legal sufficiency of the plaintiff's cause of action." *Hodge*, 156 Ill. 2d at 115. Regions's motion thus admitted the legal sufficiency of DNR's breach of contract claim but asserted that it was defeated by the contested letter of credit's expiration in 1987.

¶ 20    Letters of credit are a unique type of security device. *Village of Long Grove v. Austin Bank of Chicago*, 268 Ill. App. 3d 70, 73 (1994). The letter at issue in this case is a "standby" letter of credit, obligating "the issuer to pay [the beneficiary] in the event of a default by one who procured its issuance." *Pastor v. National Republic Bank of Chicago*, 76 Ill. 2d 139, 147 (1979). In this case, the issuer is Regions's predecessor, First National Bank; the customer who procured its issuance is SCI; and the beneficiary is DNR.

¶ 21    Standby letters of credit involve three separate contracts:

> "[(1)] the contract between the issuer and its customer whereby the issuer agrees to issue the letter of credit to the beneficiary; [(2)] the contract between the customer and the beneficiary, which is the agreement underlying the letter of credit; and [(3)] the contract obligating the issuer to pay the beneficiary upon demand if the beneficiary complies with the conditions specified in the letter." *Koenig & Strey GMAC Real Estate v. Renaissant 1000 South Michigan I, LP*, 2016 IL App (1st) 161783, ¶ 18.

The "independence principle" applicable to such letters dictates that each of these contracts is separate from the others. *Village of Long Grove*, 268 Ill. App. 3d at 74. If the beneficiary's demand for payment from the issuer conforms to the letter's requirements, "the bank may not look to the underlying contract between the customer and the beneficiary in determining whether to honor the

demand," "even if the beneficiary breached the underlying agreement, so long as the breach was not fraudulent." *Village of Long Grove*, 268 Ill. App. 3d at 74. Because it is fundamentally a contract, "a letter of credit is construed by applying the same general principles used in construing other written contracts." *Koenig & Strey GMAC Real Estate*, 2016 IL App (1st) 161783, ¶ 18 (citing *Molter Corp. v. Amwest Surety Insurance Co.*, 267 Ill. App. 3d 718, 721 (1994)).

¶ 22        On appeal, in the context of our review of a trial court's ruling on a section 2-619 motion, the construction of a contract presents a legal issue we review *de novo*. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20. When interpreting a contract, "the primary objective is to give effect to the intention of the parties," which is best indicated by the plain and ordinary meaning of the contractual language. *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 31. Under the "four corners" rule, "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). That the parties disagree on the contract's meaning does not automatically render it ambiguous. *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 33.

¶ 23        There are several key principles used in contract interpretation. The contract must be viewed as a whole and its provisions construed in the context of every other provision, rather than viewing each clause in isolation. *Nord*, 2023 IL App (4th) 220669, ¶ 31. A contract should not be interpreted "in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). A reviewing court likewise "cannot alter, change or modify existing terms of a contract, or add new terms or conditions to which the parties do not appear to have assented." *Thompson*, 241 Ill. 2d at 449.

¶ 24        If, however, a contract's plain language "is susceptible to more than one meaning," it is ambiguous. *Air Safety*, 185 Ill. 2d at 462. Only then can courts admit extrinsic evidence to resolve the ambiguity. *Air Safety*, 185 Ill. 2d at 462. Extrinsic evidence can include " 'the position of the parties, the surrounding circumstances existing at the time of execution, and the parties' subsequent conduct.' " *Gillespie Community Unit School District No. 7, Macoupin County, Illinois v. Union Pacific R.R. Co.*, 2015 IL App (4th) 140877, ¶ 91 (quoting *Harris Trust & Savings Bank v. La Salle National Bank*, 208 Ill. App. 3d 447, 453 (1990)).

¶ 25        As a threshold matter, the parties dispute which version of the Uniform Commercial Code (UCC) applies to this letter of credit. Regions acknowledges that the version of the UCC in effect in 1985 (Ill. Rev. Stat. 1985, ch. 26, ¶ 1-101 *et seq.*), when the letter was issued, did not address perpetual letters of credit or those without a definitive expiration date or duration. Elsewhere in its brief, however, Regions asserts that article 5 of the UCC (810 ILCS 5/art. 5 (West 1998)), as adopted by Illinois on January 1, 1997, governs this case. DNR is correct that the law in effect at the time of contracting applies. See *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 20 ("[A] 'basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms.' " (quoting *Illinois Bankers' Life Ass'n v. Collins*, 341 Ill. 548, 552 (1930)). Moreover, the 1997 UCC explicitly states that it "applies to a letter of credit that is issued on or after the effective date of this amendatory Act of 1996" and thus, by its own terms, does not apply to a letter of credit issued in 1985. 810 ILCS 5/13-102 (West 2016). Because the UCC provisions in effect at the time of contracting apply but do not specifically address the issues that the parties dispute, the UCC is not relevant to our analysis.

¶ 26     We begin with the plain language of the renewal clause. The letter provides that it will "automatically extend for an additional term of One (1) year unless [First National Bank] provides at least ninety (90) days notice prior to the expiration date that it does not wish to extend the Letter of Credit for an additional period." Regions contends that the plain language of the phrase "*an* additional *term* of one year," using the singular, means that the letter could only have extended once, as evergreen provisions use plural language when discussing additional future *terms*.

¶ 27     In support of its argument, Regions cites several cases from both Illinois and other jurisdictions containing examples of evergreen provisions that use the plural to indicate the parties' intent for the letter to renew indefinitely. See *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 54 ("[C]ases from foreign jurisdictions are not binding on this court, although they may have persuasive value."). For example, in *Molter*, 267 Ill. App. 3d at 719, the letter of credit's renewal clause provided that the agreement would be " 'automatically extended without amendment for one year from the present or any future expiration date hereof,' " and thus the beneficiary could draw on it "on or before November 5, 1990 or any automatically extended date." (Emphases omitted.) The Third District held that this language constituted an evergreen provision that "indicate[d] the [issuer's] intent to extend the credit to [the beneficiary] for an indefinite period of time." *Molter*, 267 Ill. App. 3d at 720. See also *Old Republic Surety Co. v. Quad City Bank & Trust Co.*, 681 F. Supp. 2d 970, 971 (C.D. Ill. 2009) ("This CLEAN IRREVOCABLE LETTER OF CREDIT expires on 02/06/08, but will be automatically extended for additional one year terms if you have not received by certified mail notification of our intention not to renew 30 days prior to the original expiry date and each subsequent expiry date.").

¶ 28        In contrast, in *Stringer Construction Co. v. La Grange State Bank*, 148 Ill. App. 3d 621, 626 (1984), the letter of credit "authorized [the beneficiary] to request an extension of the expiration date for 'an additional period of up to one (1) year.' " The First District held that "this provision clearly evinces an understanding that the letter of credit would not be extended beyond one year." *Stringer Construction Co.*, 148 Ill. App. 3d at 626.

¶ 29        There is no dispute that the renewal clauses in *Molter* and *Old Republic* using the plural terms "*any future expiration date*" (emphasis in original) (*Molter*, 267 Ill. App. 3d at 719) or "additional one year *terms*" (emphasis added) (*Old Republic*, 681 F. Supp. 2d at 971) created evergreen provisions renewing annually and indefinitely. DNR contends, and we agree, that this language is not necessarily the only way to craft an evergreen provision.

¶ 30        Notwithstanding the letter of credit's plain language that it could be extended "for an additional term of One (1) year," DNR argues that the letter of credit renewed annually and indefinitely. DNR reasons that (1) the letter's terms unambiguously required Regions to give notice of nonrenewal 90 days prior to the letter's expiration date, (2) the renewal provision states that renewal would occur "automatically," (3) the one year, annual term of renewal is explicit, (4) the letter did not include an expiration date, and (5) the cases cited by Regions are distinguishable because the letters of credit discussed therein contained expiration dates and language about automatic renewal.

¶ 31        Regions does not dispute DNR's first three points. In trying to distinguish the cases cited by Regions, however, DNR undermines its own arguments. Both parties agree that the letter was issued on December 12, 1985, and the initial term was for one year, thus expiring on December 12, 1986. To prevent automatic renewal on December 12, 1986, Regions's predecessor would have had to provide notice of nonrenewal before September 12, 1986—90 days before the expiration

date. Because it did not do so, the letter clearly extended for an additional yearlong term, until December 12, 1987. While these dates were not explicitly stated in the letter, DNR's acknowledgement of them belies its argument that the letter did not contain an expiration date. Moreover, to interpret the provision as lacking an expiration date would render meaningless the requirement for the issuer to provide "ninety (90) days notice prior to the *expiration date*." (Emphasis added.) See *Thompson*, 241 Ill. 2d at 442. If there was no expiration date, there would be no way to measure when the issuing bank would need to provide notice of nonrenewal. Furthermore, DNR contradicts itself by arguing that the letter in this case is automatically renewed while also asserting that Regions's cited cases are distinguishable because their letters of credit contain language about automatic renewal. For these reasons, DNR's attempt to distinguish the cases cited by Regions on the basis that the letters at issue in those cases had expiration dates and language about automatic renewal is not persuasive, as the letter at issue in this case also had both an expiration date and an automatic renewal provision.

¶ 32        In trying to distinguish these cases, DNR also seems to conflate expiration dates with termination dates. In *Molter* and *Old Republic*, the letters of credit had annual expiration dates but no termination dates specifying how many times the letters could be renewed. In other cases, however, the letter of credit provided both an initial expiration date and a termination date, or "final" expiration date, beyond which the letter would not automatically extend. See, *e.g.*, *J.P. Morgan Trust Co., N.A. v. U.S. Bank, N.A.*, 446 F. Supp. 2d 956, 958 (E.D. Wis. 2006) (The letter of credit automatically extended for an additional one-year period from the present or any future expiration date unless the issuer tendered a notice of nonrenewal, but " 'in any event, this letter of credit shall not be automatically extended beyond May 15, 2003, the final expiration date.' "). Just like in *Molter* and *Old Republic*, the letter of credit at issue in this case had initial and subsequent

expiration dates (December 1986 and 1987) but no specified ultimate termination date. However, just as DNR points out that there is no set language to create an evergreen provision, there is also no set language to indicate a letter of credit's final expiration date. In other words, the lack of a specified termination date does not preclude the letter's termination if the text of the renewal clause plainly limits the letter to one renewal for a one-year term.

¶ 33　　　DNR next argues that this letter must be indefinitely renewable because it was irrevocable under its own terms and under the terms of the UCC in effect at the time the letter was issued. Again, this argument conflates two distinct principles—revocability and perpetuity. Simply because something is irrevocable while it is in effect does not mean it is perpetual. See, *e.g.*, *J.P. Morgan Trust Co.*, 446 F. Supp. 2d at 958-59 (noting that the letter at issue was irrevocable and holding it terminated on the final expiration date of May 15, 2003).

¶ 34　　　DNR then asserts that its interpretation aligns with the underlying contract between SCI and DNR by ensuring that the letter remained valid for the entire life of the mining permit. However, absent any ambiguity in the language of the letter of credit, we cannot consider extrinsic evidence to interpret the letter. See *Air Safety*, 185 Ill. 2d at 462. DNR itself contends that the letter of credit is unambiguous. Additionally, considering the contract between SCI and DNR would violate the independence principle applicable to letters of credit. See *Village of Long Grove*, 268 Ill. App. 3d at 74 (explaining that "if the documents presented conform to the requirements stated in the letter of credit, the bank may not look to the underlying contract between the customer and the beneficiary in determining whether to honor the demand"). Because the contract between SCI and DNR is a separate instrument from the contract between Regions and DNR, we cannot look to the underlying contract to construe the letter of credit.

¶ 35        In sum, it is not dispositive that the letter of credit between Regions and DNR (1) sets expiration dates but contains no express termination date, (2) contains automatic renewal language, and (3) differs from other letters that contain evergreen provisions.

¶ 36        That leaves us to focus on the precise words of the renewal clause: the letter will "automatically extend for an additional term of One (1) year." These words state that the letter will be renewed for "*an*" additional "*term*," in the singular. DNR's argument that there is no language expressing the parties' intent that the letter will renew only once ignores these critical words. A reviewing court " 'must give effect to *every word*, clause, and sentence; it must not read a statute so as to render *any part* inoperative, superfluous, or insignificant.' " (Emphases in original.) *People v. Hayden*, 2018 IL App (4th) 160035, ¶ 122 (quoting *People v. Ellis*, 199 Ill. 2d 28, 39 (2002)). "Like all the other words in a statute, the articles count" and "should not be overlooked or discounted," as they were "chosen by design." *Hayden*, 2018 IL App (4th) 160035, ¶ 122; see *Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021) (holding that a statute's requirement for "a" notice of appearance specifically required a single document, rather than multiple documents). That the letter renewed for "an" additional "term" means that it renewed for a singular term. Regions is correct that interpreting the renewal clause otherwise would improperly nullify the article "an" and modify "term" by adding an "s." See *Nord*, 2023 IL App (4th) 220669, ¶ 43. The drafters of the letter—whichever party that may be, as the parties dispute that point—could have written "additional *terms*," in the plural, but they did not. See *Clanton*, 2023 IL 129067, ¶ 35 ("[T]he drafters of the contract could quite easily have used other language to indicate the more limited interpretation of the termination provision that defendants now seek." (Internal quotation marks omitted.)). Because this clause is unambiguous, we will not consider extrinsic evidence, such as the revised DNR form letters of credit discussed by Regions.

¶ 37 This is in line with the holding in *Stringer Construction Co.* In that case, the First District interpreted the phrase " 'an additional period of up to one (1) year' " to mean that "the letter of credit would not be extended beyond one year." *Stringer Construction Co.*, 148 Ill. App. 3d at 626. DNR contends that *Stringer Construction Co.* is distinguishable because in that case, (1) automatic renewal or evergreen provisions were not at issue, (2) the beneficiary had to affirmatively request the extension, and (3) the letter provided an explicit expiration date. None of these points are persuasive. Though the method of renewal—by an affirmative request by the beneficiary, rather than automatically—differs from that presented here, that is not dispositive of the meaning of the phrase "an additional period." The beneficiary in *Stringer Construction Co.* attempted to renew the letter of credit twice, but the language of the renewal clause prevented it from doing so. The phrase "an additional term" should be interpreted in the same way here.

¶ 38 Consequently, the trial court erred when it concluded that the letter of credit at issue here contained an evergreen provision that indefinitely renewed the letter until Regions tendered a notice of nonrenewal to DNR. The plain language of the letter indicates that it was to be renewed for only 1 additional term, not 34. The letter expired on December 12, 1987, and was no longer in force when DNR demanded payment from Regions in 2016. As a result, DNR's demand was not in compliance with the letter's terms and Regions justifiably dishonored it. The invalidity of the contract thus constitutes an "affirmative matter avoiding the legal effect of or defeating [DNR's] claim." 735 ILCS 5/2-619(a)(9) (West 2018). DNR's verified complaint must therefore be dismissed with prejudice.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we reverse the trial court's judgment and remand the cause with instructions that the trial court dismiss DNR's verified complaint with prejudice.

¶ 41          Reversed and remanded with directions.